**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

Nina C.,                                        )
                                                )
                    Plaintiff,                  )
                                                )       Case No.: 25-cv-50284
          v.                                    )
                                                )       Magistrate Judge Margaret J. Schneider
Frank Bisignano,                                )
Commissioner of Social Security,                )
                                                )
                    Defendant.                  )

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Nina C., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [13] is denied and the Commissioner's motion for summary judgment [17] is granted.

**BACKGROUND**

**A.      Procedural History**

On March 30, 2022, Nina C. ("Plaintiff") filed an application for disability and disability insurance benefits. R. 21. Plaintiff alleged disability beginning on September 3, 2021. *Id.* Her application was denied initially on January 9, 2023, and upon reconsideration on October 10, 2023. *Id.* Plaintiff filed a request for a hearing on October 24, 2023. On May 2, 2024, Administrative Law Judge ("ALJ") Anthony Smereka held a telephonic hearing. *Id.* Plaintiff appeared, testified, and was represented by counsel. *Id.* At the hearing, an impartial vocational expert, Teresa Trent, also testified. *Id.*

On May 21, 2024, the ALJ issued his written opinion denying Plaintiff's claims for disability insurance benefits. R. 21-23. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [9]. Now before the Court are Plaintiff's brief in support of his motion to reverse and remand the Commissioner's decision [13], the Commissioner's motion for summary judgment and response to Plaintiff's brief [17], and Plaintiff's reply brief [18].

**B.  The ALJ's Decision**

In his ruling, the ALJ followed the statutorily required five-step analysis to determine

whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Plaintiff's application date of March 30, 2022. R. 23. At step two, the ALJ found that Plaintiff had the following severe impairments: depression with anxiety, status post cardiac ablation, and obesity. R. 23-24. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 24-25.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform medium work, except that, Plaintiff must avoid work at unprotected heights or around dangerous moving machinery. She cannot climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs. Plaintiff can occasionally balance, stop, kneel, and crouch. She cannot crawl. Plaintiff can have occasional contact with the public, coworkers, and supervisors. She can tolerate occasional changes in a routine work setting. Plaintiff cannot do work requiring a specific production rate, such as assembly line work. R. 25-30. At step four, the ALJ found that Plaintiff had no past relevant work. R. 30. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as packager, laundry laborer, routing clerk, marking clerk, and inspector. R. 31-32. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since March 30, 2022, the date the application was filed. R. 32.

**STANDARD OF REVIEW**

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (citation modified) (quoting *Biestek*, 587 U.S. at 103). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified). The court is

2

obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that the ALJ (1) failed to properly evaluate Plaintiff's allegations of pain and dysfunction; (2) constructed an RFC that contained errors and was not supported by substantial evidence; and (3) failed to properly evaluate medical source opinions. The Court finds that the ALJ's decision was not patently wrong, was supported by substantial evidence, and accordingly does not find error.

### Evaluation of Subjective Symptoms

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's allegations of pain and dysfunction by ignoring crucial evidence that was consistent with her allegations. The Court finds that the ALJ reasonably evaluated Plaintiff's subjective symptoms.

ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*. When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original). Here, the ALJ's evaluation of Plaintiff's pain and dysfunction was adequately supported with evidence and explanation and not patently wrong.

Plaintiff argues the ALJ ignored objective medical evidence that supported her allegations of physical and mental dysfunction. First, Plaintiff emphasizes records that show Plaintiff had a slow or abnormal/antalgic gait, and contends that medical records showed this condition from 2021 through 2022 in physical examinations and consultative examinations. Plaintiff argues the ALJ ignored these abnormalities that supported Plaintiff's allegations that she had difficulty walking and standing and therefore erred in crafting an RFC that allows for Plaintiff to perform medium

3

work. From the record, Plaintiff notes she reported in December 2022 she was only able to sit, stand, or walk for not more than 10 minutes. At her March 2024, hearing, Plaintiff testified she could walk only about 20 feet on a bad day, and 40 feet on a good day, and could lift about 5 pounds comfortably. In her brief, Plaintiff states that the objective medical evidence reveals that she had a slow, abnormal and antalgic gait, pain and decreased range of motion in her back and neck, and abnormal straight leg raise.

In his decision, the ALJ acknowledged Plaintiff's subjective symptoms, noting that she stated she has difficulty standing, sitting, and walking, with pain in her back. The decision further states that Plaintiff's August 2022 and June 2023 functional reports note her contention that she is unable to work due to an inability to lift over her head, walk more than 40 feet, or stand longer than 5 minutes. The ALJ further analyzed Plaintiff's objective medical records. Those records disclosed, among other things, only moderate degenerative changes at Plaintiff's cervical spine with mild scoliosis, no acute bony abnormalities, a cervical spine MRI which showed mild degenerative changes, and no spinal cord abnormalities. The ALJ also scrutinized the opinion statements by internist nurse practitioner Cindy Rich (from April 2021 and April 2022) regarding Plaintiff's physical impediments. The ALJ acknowledged that Rich's opinions are not based on objective evidence, but rather on Plaintiff's subjective statements about her symptoms. Relying on Plaintiff's statements, Rich opined that Plaintiff would need to lie down or recline during an 8-hour workday, could walk less than a block, could sit for 6 hours in a workday, and could stand or walk for only 2 hours in a workday. The ALJ found Rich's opinions not persuasive since the majority of Plaintiff's visits to the Rich's office were solely to receive medical refills for Paxil, spinal imaging revealed only mild abnormalities, and treatment records and objective evidence did not support the level of impairment suggested by Plaintiff. R. 29.

Plaintiff also makes a brief argument that the ALJ erred regarding Plaintiff's subjective symptoms as to mental dysfunction and notes that the ALJ failed to provide any evidentiary support for his finding that Plaintiff's mental symptoms "appear[ed] to be well controlled with medication." R. 30. Specifically, Plaintiff complains that the decision fails to acknowledge records that show that Plaintiff appeared disheveled, anxious, tired, irritable, agitated, and tearful during her mental status examinations. In his decision, the ALJ did acknowledge that Plaintiff's disheveled appearance was noted at some of Plaintiff's visits with her internist along with her expressing thoughts of hopelessness. The ALJ decision also recognized that Plaintiff reported to her medical providers that she was anxious, stressed, sad, angry, and worried. R. 29-30. Additionally, as argued by the Commissioner, Plaintiff consistently reported doing well on her medication during the relevant period of time and, therefore, Plaintiff and her providers were satisfied with keeping her on the designated conservative treatment. *See* [17], p. 8.

As noted above, "[so] long as the ALJ issues a reasoned explanation, we 'will not overturn an ALJ's credibility determination unless it is patently wrong.' Patently wrong is a high threshold – 'only when the ALJ's determination lacks any explanation or support – will we declare it to be patently wrong and deserving of reversal.'" *Ray v. Saul*, 861 Fed. Appx. 102, 107 (7th Cir. 2021) (quoting *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)). With this standard in mind, the Court finds that the ALJ did not ignore objective medical evidence that supported Plaintiff's allegations of physical and mental dysfunction. Rather, the ALJ properly based her credibility findings on the finding that that objective medical record did not support the extreme limitations

4

that the Plaintiff suggests in her arguments. The ALJ's decision regarding Plaintiff's subjective symptoms provides adequate explanation and support and is not patently wrong.

### RFC Supported by Substantial Evidence

Next, Plaintiff argues that the ALJ's RFC finding contains legal error and is not supported by substantial evidence because it was not based on any medical opinion and it ignored crucial evidence. As to the fact that the RFC is not based on a medical opinion, Plaintiff argues it is error that the RFC is less restricted than any medical opinion in the record. As to the argument that the RFC ignores crucial evidence, Plaintiff again argues that the decision ignores records that show Plaintiff had a slow, abnormal/antalgic gait, and ignored Plaintiff's ongoing abnormal mental status examination results.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *2. When determining a claimant's RFC, an ALJ must "evaluate the intensity and persistence of [a claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal quotations and citation omitted). Here, the ALJ has said enough to ensure that he considered the totality of Plaintiff's limitations and included all limitations supported by the record in formulating the RFC.

The ALJ found that Plaintiff could perform a range of medium work with occasional contact with others and occasional changes in the work setting without a specific production rate. Plaintiff argues that in so finding, the ALJ designated that Plaintiff was less restricted than any limitation proposed by any medical opinion in the record. In support of this, Plaintiff notes that that ALJ rejected the opinion of Nurse Practitioner Rich and also rejected the opinion of the state agency consultants, who opined that Plaintiff would be limited to light work with marked limitations in her ability to interact with others. The Court finds no error in the ALJ's RFC based on its failure to rely on the opinions of Rich or the state agency consultants.

As the Seventh Circuit has held, an RFC need not adopt any doctor's opinion, *Fanta v. Saul*, 848 Fed. Appx. 655, 658 (7th Cir. 2021), and an adequate RFC is based on all relevant evidence in the record. 20 C.F.R. § 416.945(a)(3). Here, like in *Fanta*, the ALJ provided sufficient reasons for rejecting the medical opinions. As noted above, the ALJ did not consider Rich's opinion persuasive because the majority of Plaintiff's visits to Rich were to receive medication refills, the objective medical imaging showed only mild abnormalities, and the treatment records failed to support the level of impairment suggested by Plaintiff. R. 30. As to the state agency consultants, the ALJ determined that taking into consideration the consultants' recommended

5

limitations did not preclude a finding of medium work. Specifically, as discussed *infra*, the ALJ found that the aspect of the opinions that included the finding of marked impairment in interacting with others was not persuasive because it was not consistent with the record or with the consultants' own findings of moderate limitations in other specific types of social interaction. The ALJ came to these conclusions following a thorough review of the medical records spanning several years and multiple providers. "An ALJ adequately supports his RFC determination when he consider[s] all limitations supported by [the] record evidence and tie[s] the record evidence to the limitations included in the RFC finding." *Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020). Here, the ALJ's RFC is well-supported by substantial evidence.

Plaintiff also argues that the ALJ ignored crucial evidence when he formulated the RFC. Plaintiff argues again that the ALJ failed to discuss Plaintiff's slow, abnormal, and antalgic gait. Yet, the ALJ specifically acknowledged that at the December 2022 medical consultative exam, Plaintiff was not able to walk on toes or heels, squat and rise, or hop on one leg. The decision further states that Plaintiff had difficulty getting on and off the examination table. R. 27.[1] Despite this, Plaintiff argues again that the ALJ erred by not mentioning Plaintiff's gait issues. As noted above, the ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. Given the analysis provided by the ALJ in support of the RFC, the Court cannot find, as Plaintiff suggests, that the ALJ "ignore[d] an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Additionally, Plaintiff again argues that the ALJ ignored Plaintiff's abnormal mental status examination results, including her disheveled appearance, her anxious, tired, irritable, and agitated behavior, and her tearful demeanor during her mental status examinations. As previously stated, the Court emphasizes that the ALJ's decision does, in fact, address some of Plaintiff's abnormal mental status presentations. Moreover, the ALJ's decision is adequately supported by substantial evidence, including the findings and limitations included in Plaintiff's RFC.

### Analysis of Opinion Evidence

Finally, Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence from Nurse Practitioner Rich, and the prior administrative findings of state agency psychological consultants Joesph Mehr, Ph.D. and Donna Galassi-Hudspeth, Psy.D. Nurse Practitioner Rich opined that Plaintiff had numerous physical limitation, including her opinion that Plaintiff could only stand or walk for 2 hours in a workday. Rich further opined that Plaintiff had an extreme limitation in multiple functional areas, had marked limitations in her ability to cooperate with others or ask for help when needed, and was precluded from dealing with people due to her irritability. Mehr and Galassi-Hudspeth opined that Plaintiff had marked limitations in ability to interact with others and was limited to a predictable routine work setting with brief social interaction. Plaintiff regards the ALJ's rejection of these opinions as error.

An ALJ "will not defer or give any specific evidentiary weight, including controlling

---

[1] However, at that time, the consultative examiner provided no opinion on Plaintiff's ability to work, nor suggested any limitations.

weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Instead, the ALJ must consider factors such as supportability, consistency, relationship with the claimant, and length of the treatment relationship. 20 C.F.R. § 404.1520c(a), (c). Among these, supportability and consistency are the most important factors, and the ALJ is required to explain how the ALJ considered these two factors in their determination or decision. *Patrice W. v. Kijakazi*, No. 20 CV 02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. §404.1520c(b)(2)). In assessing the supportability factor, a medical opinion is considered more persuasive "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c. In assessing the consistency factor, an ALJ should consider the consistency of the medical opinion with "the evidence from other medical sources and the nonmedical sources in the claim." *Id*. "[O]nce the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons— a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (citation modified).

The ALJ properly articulated his analysis of the supportability and consistency factors regarding the medical opinions. As to Rich's opinions regarding Plaintiff's physical limitations, Plaintiff again argues that the ALJ erred by failing to acknowledge Plaintiff's slow, abnormal, antalgic gait. As previously noted, the ALJ rejected these opinions because the opinions were based on Plaintiff's subjective symptoms. Additionally, Rich's opinions were found unpersuasive since most of Plaintiff's visits to Rich's office were solely to receive medical refills for Paxil, as well as evidence that Plaintiff's spinal imaging revealed only mild abnormalities, and treatment records and objective evidence did not support the level of impairment suggested by Plaintiff. Regarding Rich's opinions as to Plaintiff's mental limitations, Plaintiff makes the same argument that the ALJ ignored evidence of Plaintiff's mental presentation. The ALJ recognized that some records provided details of Plaintiff's presentation – including her disheveled appearance. Again, the ALJ is not obligated to "address every piece or category of evidence" addressed by the Plaintiff. *Warnell*, 97 F.4th at 1053. The Court finds that the ALJ adequately articulated his reasons for finding Rich's opinions unpersuasive.

Lastly, Plaintiff argues that the ALJ erred in discounting the opinions of Mehr and Galassi-Hudspeth that Plaintiff had marked limitations in her ability to interact with others, and was limited to a predicable, routine work setting with limited and brief interactions with others. The ALJ instead found that Plaintiff had a moderate limitation in social interaction and provided no other rationale for rejecting other limitations suggested by Mehr and Galassi-Hudspeth. Plaintiff's argument appears to be that the ALJ erred by not adopting these opinions and crafting an RFC that limited Plaintiff to occasional interactions with coworkers and supervisors.

In analyzing the opinions of Mehr and Galassi-Hudspeth, the ALJ noted that while the consultants found that Plaintiff had a *moderate* limitation in her ability to interact with the public, accept instruction and criticism from supervisors, and get along with coworkers and peers, they also found a *marked* limitation in interaction with others. The ALJ found these opinions not persuasive because "[t]he finding of a marked impairment in interacting with others is not consistent with the record or with the consultants' own findings of moderate limitations in the specific abilities of social interaction." R. 30. The ALJ's decision further remarks that while

Plaintiff reported some difficulties in interacting with others, the record reveals no evidence of an impairment more severe than moderate.[2] *Id*. As noted above, "[t]he most important factors [the ALJ must] consider when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability…and consistency." 20 C.F.R. § 404.1520c(a). Here, the ALJ clearly set out why he found the state agency psychological consultants' opinions not supported or consistent.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to reverse and remand the Commissioner's decision [13] is denied and the Commissioner's motion for summary judgment [17] is granted.

Date: April 24, 2026                    ENTER:

*Margaret J. Schneider*
United States Magistrate Judge

---

[2] As an example of Plaintiff's ability to interact with others, Plaintiff testified at the hearing that she works approximately 20 hours a week for a neighbor watching her two children – ages 2 and 11. R. 40-41.